■ MILDRED DUPACK et al., Appellants, v NATIONWIDE LEISURE CORPORATION et al., Defendants, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, INC., Respondent. MARION KLAKIS et al., Appellants, v NATIONWIDE LEISURE CORPORATION et al., Defendants, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, INC., Respondent. RICHARD BERGER et al., Respondents, v NATIONWIDE LEISURE CORPORATION et al., Defendants, and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellant.—Order, Supreme Court, New York County, entered August 24, 1978, granting the motion of respondent Fidelity and Deposit Company of Maryland, Inc., to dismiss the complaint, is unanimously reversed, on the law, without costs and without disbursements, and the motion to dismiss as against the surety is denied, and the fourth action against the surety is reinstated. Order, Supreme Court, New York County, entered August 23, 1978, granting the motion of respondent Fidelity and Deposit Company of Maryland, Inc., to dismiss the complaint, is unanimously reversed, on the law, without costs and without disbursements, and the motion to dismiss as against the surety is denied, and the fourth cause of action against the surety is reinstated. Order,

Supreme Court, New York County, entered September 7, 1978, denying the motion of appellant to dismiss the complaint, is unanimously affirmed, without costs. Plaintiffs in each action purport to represent a class of consumers who contracted for separate charter tour vacations from defendants Nationwide Leisure Corporation and Stuart Graff. Plaintiffs allege breach of contract and fraudulent misrepresentation, claiming they did not receive air transportation *(Klakis)* or accommodations *(Dupack* and *Berger)* in accordance with their contract with the tour operator, Nationwide. In *Dupack,* complainants contracted for a one-week tour during the summer of 1977. The accommodations specified were to be "a new Superior First Class Holiday Inn or similar" in Munich, Germany. Upon arrival, different accommodations, allegedly inferior in terms of quality and location, were substituted. An earlier review by this court of an order of Special Term denying class status *(Dupack v Nationwide Leisure Corp.,* 70 AD2d 568) held that Dupack could not represent persons who did not stay at the hotel to which she was assigned. She was granted leave to renew her motion for class status after discovery of the nature and size of that class. In *Berger,* complainants contracted for a charter tour to London, England, during the summer of 1976, which also specified a particular hotel, the Kensington Close Hotel in London, or similar. As in *Dupack,* the substituted accommodations were alleged to be substantially inferior in quality and location, lacking facilities such as pool and sauna, and situated in remote, unsafe areas. In *Klakis,* complainants contracted for a five day, four night charter tour with accommodations at a hotel in Nassau/Paradise Island, scheduled to leave from John F. Kennedy International Airport on January 22, 1978 at 6:00 A.M. The flight finally left at 9:00 A.M. January 23, 1978, but there were additional delays in transportation. Tour members were not permitted to occupy their rooms immediately upon arrival. They were compelled to give up their rooms early on the morning of the day of departure resulting in hours of inconvenience. These alleged breaches of the contract for transportation and accommodations resulted in a tour of two and a half days and three nights. As in *Dupack,* this court affirmed a denial of class action status with leave to renew after discovery. *(Klakis v Nationwide Leisure Corp.,* 73 AD2d 521.) Here, there appear to be only 21 tour members who have not yet settled their claims, nor has it been shown that complaints of purported class members are the same as, or typical of those of plaintiffs. These charter tours were organized pursuant to Civil Aeronautic Board regulation 14 CFR 378a, which requires a tour operator to obtain a surety bond to assure contract performance. The question presented on this appeal is whether the surety bonds of defendant-respondent Fidelity in *Dupack* and *Klakis* and of defendant-appellant St. Paul in *Berger* provided coverage for these claims. The court at Special Term in *Dupack* and *Klakis* found that the purpose of this surety bond was to assure that payments on the tour contracts were utilized to purchase the promised transportation and accommodations. It was further found that plaintiffs' claims were based on dissatisfaction with the quality of the services delivered and not with a complete nonperformance which would give rise to damages within the scope of coverage. Subjective complaints going to the elements of satisfaction were not, it was held, within the contemplation of the CAB, and that, as a matter of law, the bonds were not to cover these claims. In *Berger,* the court held that the purpose of the CAB regulations was broad enough to encompass the claims of plaintiffs therein. The court reasoned that a narrower interpretation of the regulations and of the bond, excluding these

kinds of claims, as urged by the surety, would require more explicit language to that effect in the regulations and bond. The *Berger* court distinguished its holding from those of the other similar cases interpreting the surety bonds and CAB regulations in the same manner as had been done in *Dupack* and *Klakis,* by pointing to the different language of the bond issued by St. Paul. Despite the difference in language of the bonds, all parties on this appeal agree the language variation is not the determinant. Rather, it is the purpose of the CAB regulation which controls the scope of coverage of the bonds. Each bond, in fact, states it was issued subject to 14 CFR 378a. Subdivision (c) of 14 CFR 378a.31 specifically states that such bonds are required in order to insure the financial responsibility of the tour operator in supplying "the transportation, and all other accommodations, services, and facilities in accordance with the contract between the tour operator * * * and the tour participants". The sureties argue this does not extend to the quality of service furnished but only contemplates nonperformance of that category of service promised. The complainants contend that the quality of, and satisfaction with, the service is not, per se, at issue in delineating the extent of coverage of the bonds, but that the specific transportation, accommodation or service agreed upon in the tour contract was not forthcoming. In *Dupack* and *Berger,* complainants allege they did not receive the specific hotel or a similar one, as they had contracted. In *Klakis,* due to the delay, complainants did not receive the contracted for departure date and did not receive the contracted for number of days and nights of their tour, nor the accommodation promised for the entire period of their stay. We hold that the claims asserted in each action are not, as a matter of law, excluded from coverage under the terms of each bond. As a contract, a surety bond, if unambiguous, should be given its plain, ordinary and proper meaning *(Johnson v Travelers Ins. Co.,* 269 NY 401, 408); any ambiguity is to be resolved in favor of those to be protected. *(American Sur. Co. of N. Y. v Wells Water Dist.,* 253 App Div 19, affd 280 NY 528.) In applying these general rules of construction, a surety bond must be construed in conjunction with the principal contract. *(Madawick Contr. Co. v Travelers Ins. Co.,* 307 NY 111.) The CAB regulations providing for the surety bonds also require reference to the principal contract between the tour operator and tour participants. (14 CFR 378a.31 [c].) The respective tour contracts set forth specific items of transportation, accommodation and service or a similar alternative. Whether the claims herein arise from nonperformance of the precise services contracted for or from dissatisfaction with the quality of those services which were rendered is a factual issue which cannot be determined on a motion addressed to the face of the pleadings in these cases. Concur—Kupferman, J. P., Birns, Fein, Markewich and Lupiano, JJ.